346        APPELLATE COURTS OF ILLINOIS.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

# Kay Wood, Appellant, v. Universal Adding Machine Company, Appellee.

## Gen. No. 16,034.

1. CORPORATIONS—*when stock subscription not enforceable.* Where a stock subscription is made upon the express condition that an assignment of foreign patents shall be made to the proper person as trustee for the benefit of particular persons, if such an assignment is not in fact made, such stock subscription cannot be enforced, and any payments made upon account thereof can be recovered by the subscriber making the same.

2. CORPORATIONS—*when foreign statute authorizing forfeiture of installments paid upon stock subscription will not be enforced.* If such statute is operative only in connection with the by-laws of the corporation it will not be enforced in the absence of the introduction in evidence of such by-laws.

3. CORPORATIONS—*when forfeiture of installments paid upon stock subscription will not be enforced.* Where a demand for payment of a balance due is not in accordance with the terms of the contract of subscription the board of directors are not authorized to enforce a forfeiture of payments theretofore made.

4. CONTRACTS—*remedies where corporation places itself in a position of inability to perform, in the case of a subscriber to capital stock.* Where a corporation sells the stock subscribed for and thus places itself in a position where it cannot perform, the subscriber may treat the contract of subscription as rescinded and sue for the return of the money paid or may treat the contract as repudiated and sue for damages for its breach or may treat it as alive and sue for performance.

5. MUNICIPAL COURT—*when final judgment rendered on appeal.* If a case is tried before the court without a jury and a finding and judgment is rendered for the defendant, the Appellate Court may enter final judgment for the plaintiff if the evidence shows he is entitled thereto.

Appeal from the Municipal Court of Chicago; the HON. FREDERICK L. FAKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909.    Reversed.    Opinion filed December 13, 1911.

ADAMS & CANDEE, for appellant.

MOSES, ROSENTHAL & KENNEDY, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

The Universal Adding Machine Company, appellee here, is a corporation organized under the laws of the State of Missouri with its principal office in the city of St. Louis. In the latter part of 1906, they were engaged in manufacturing an adding machine, patented under the laws of the United States and numerous foreign countries. Its capital stock was $750,000. About that time, that corporation determined to increase its capital stock to $1,000,000, by issuing 2,500 shares of stock at the par value of $100 per share. After some negotiations appellant and other residents of Chicago subscribed for the whole of the proposed stock issue of 2,500 shares, appellant agreeing to take 25 shares and to pay therefor $2,500 on the terms and conditions contained in the following paper, signed by him, viz.:

"WHEREAS, the stockholders of the Universal Adding Machine Company, a corporation under the laws of the State of Missouri and located in the City of St. Louis, in the State of Missouri, have, by resolution duly adopted on the 21st day of April, 1906, authorized an increase of its capital stock from seven hundred and fifty thousand dollars ($750,000), its present authorized capital stock, to one million dollars ($1,000,-000), such increase to be for the aggregate amount of two hundred and fifty thousand dollars ($250,000), divided into two thousand five hundred (2,500) shares of common stock of the par value of one hundred dollars ($100) each, so that the capital stock of said corporation, when so increased, shall consist of ten thousand (10,000) shares of common stock of the par value of one hundred dollars ($100) per share; and whereas, the said Universal Adding Machine Company, hereinafter referred to as "Machine Company," is desirous of obtaining subscriptions for said two thousand five hundred (2,500) shares of proposed increase of capital stock; and whereas, the said Machine Company is

348 APPELLATE COURTS OF ILLINOIS.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

the owner of certain letters patent issued by foreign countries; and whereas, the said Machine Company is in need of additional working capital with which to prosecute its business; and whereas, the said Machine Company has endeavored, but is unable, to obtain subscribers for the shares of said proposed increase of capital stock at their said par value unless and upon condition that said foreign patents are, without further consideration than payment at par for said proposed increase of capital stock, assigned, and transferred, absolutely, in trust for the beneficial use and ownership of such subscribers in proportion as their respective subscriptions and payments for shares of said proposed increase at par shall bear to the sum of two hundred and fifty thousand ($250,000) dollars.

"Now Therefore in consideration of the premises aforesaid, and of the assignment and transfer of said foreign letters patent to be made, or caused to be made, by the said Machine Company to James H. Eckels, of the City of Chicago, Cook county, Illinois, or to some other person or persons or corporation to be designated by him, as trustee or trustees as aforesaid, I, the undersigned, do hereby subscribe for twenty-five shares of said proposed increase of capital stock and do hereby agree and obligate myself to pay therefor to the said Machine Company one hundred dollars ($100) per share, in installments as follows, to wit: A first installment of fifty dollars ($50) per share, payable on demand made by the said James H. Eckles and five (5) subsequent installments of ten dollars ($10) per share each, payable at intervals of not less than thirty (30) days each, on demand made by the said James H. Eckles, provided, however, that if said proposed increase of capital stock shall not be duly effectuated according to law on or before the first day of March, nineteen hundred and seven (1907), and said assignment and transfer of said foreign letters patent is not made, as hereinbefore provided, on or before said first day of March, nineteen hundred and seven (1907), then my subscription hereunder shall be null and void, and all moneys paid by me hereunder on account there-

of to the said Machine Company, shall forthwith there-
after be refunded to me on demand.

"Witness my hand this 15th day of October, 1906.

"Witness:

(Signed)    KAY WOOD.

1 certificate of 10 shares.
1 certificate of 15 shares."

On December 28, 1906, James H. Eckels demanded
of the subscribers for this additional stock issue, pay-
ment of 50 per cent of the agreed price and this was
paid by all of the subscribers, appellant paying $1,250
on January 5, 1905, the same being 50 per cent of the
amount for which he had subscribed.

On January 12, 1907, James H. Eckels by an instru-
ment in writing designated one Dan Norman, as the
trustee to whom the foreign patents should be assigned.
And on the same day an assignment of all the foreign
patents was executed and delivered to Norman as trus-
tee, which assignment, omitting the description of the
different patents, is as follows:

"THIS INDENTURE, made the 12th day of January,
A. D. 1907, by and between the Universal Adding
Machine Company, a corporation organized and exist-
ing under and by virtue of the laws of the State of
Missouri, and having its principal offices and place of
business located at the City of St. Louis, Missouri,
assignor, and Dan Norman, of Chicago, Cook County,
Illinois, trustee, WITNESSETH:

"WHEREAS, the said assignor is, by virtue of cer-
tain specific and general assignments, the owner of the
entire right, title and interest in and to certain inven-
tions or improvements relating to certain improve-
ments or inventions in Calculating Machines, generally
known as adding machines, for which letters patent
have been granted and applications made in foreign
countries as follows: * * * * * * * * * * * * * *

"Now THIS INDENTURE WITNESSETH that in consid-
eration of the sum of ten dollars ($10) and other
good and valuable considerations in hand paid, the re-

ceipt of which is hereby acknowledged, the Universal Adding Machine Company has bargained and sold, and does by these presents assign and transfer unto the said trustee and his successors in trust ALL those the letters patent and applications hereinabove mentioned, with all the rights thereby granted and now vested thereby in the said assignor including the right of applying for, and the rights in, and prolongation of, such letters patent, and all the property, claim and demand, both at law and in equity, of it, the said assignor, its successors and assigns, in or to said letters patent and applications and premises:

"To HAVE, HOLD, exercise and enjoy said letters patent, applications and premises and all the rights thereby granted or which may be hereinafter granted, or in any wise thereto belonging, for and during the residue of the term of said letters patent and applications, or any prolongation of said terms, unto the said trustee and his successors in trust, for his use and advantage in as ample and beneficial a manner to all intents and purposes as the said assignor might or could have held or enjoyed the same if this transfer had not been made. AND the said assignor covenants and agrees for itself, its successors and assigns, with the said trustee and his successors in trust that it has not assigned, in whole or in part, or otherwise encumbered, the said letters patents or applications, or premises aforesaid, or granted any licensee to any one to use the inventions the subject thereof. AND the said assignor covenants and agrees for itself and successors with the said trustee and his successors in trust that it shall and will from time to time and at all times hereafter during the term of said letters patent or applications, or any of them, or any prolongation of said term or terms, as may be reasonably required, by and at the sole cost and charge of the said trustee and his successors in trust, make and execute all necessary and proper deeds and writings for more effectually assigning and assuring said letters patent, applications and premises in the manner aforesaid and ac-

cording to the true intent and meaning of these presents.

"IN WITNESS WHEREOF, the said assignor, by virtue of resolutions of its Board of Directors authorizing it to do so, has caused these presents to be signed by its president and sufficiently countersigned by its secretary, and its corporate seal affixed thereto, at the City of St. Louis, Missouri, the day and year first above written.

UNIVERSAL ADDING MACHINE COMPANY,

By CHARLES F. BATES,

President.

"Attested by Montague Lyon, secretary of the said Universal Adding Machine Company, who affixed the corporate seal of said assignor hereto this 12th day of January, A. D. 1907.

MONTAGUE LYON,

Secretary."

This assignment was on the same day ratified by the patentees.

On the same day, January 12, 1907, Dan Norman executed and delivered to the defendant the following declaration of trust, viz.:

"This is to certify that the Universal Adding Machine Company, a corporation under the laws of the State of Missouri and located in the City of St. Louis, in said state, has this day delivered to me, Dan Norman, of Chicago, Cook County, Illinois, its assignments and transfer to me, as trustee, of foreign letters patent owned by it as therein mentioned, and that 'Exhibit A,' hereto attached, is a true copy of said assignment and transfer; that said assignment and transfer was executed and delivered to me, as trustee, by the said Machine Company under and pursuant to the terms of the form of subscription agreement on the reverse side hereof; and that I, as trustee, hold said assignment and transfer subject to and under the terms of said agreement and subject to the payment of the full sum of two hundred and fifty thousand dollars ($250,000) to the said Machine Company by the subscribers for the proposed increase of the capital stock

352    Appellate Courts of Illinois.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

of the said Machine Company as therein mentioned and recited.

"Witness my hand this ........ day of January, 1907.

Dan. Norman."

On April 13, 1907, the following paper was delivered to appellant by James H. Eckels, viz.:

"Chicago, April 13, 1907.

Kay Wood, Esq.,
    Chicago, Ill.
My Dear Sir:

"I beg leave to herewith request that upon receipt of this, you forward the balance due on your subscription for twenty-five shares of Universal Adding Machine Company stock; upon receipt of this amount a temporary certificate will be issued to you, and shortly thereafter you will receive the stock certificates, as provided under the subscription made by you for the stock.

"Please forward me your check for $1,250, payable to James H. Eckels, trustee.

Yours respectfully,
(Signed) James H. Eckels,
Trustee."

No other demand was ever made on appellant for the payment of the balance of $1,250 of the agreed price of the stock subscribed for by him. On April 18, 1907, and on May 18, 1907, by letter, appellant declined to make further payments and requested appellee to repay him the $1,250 already paid and demanded the return of the $1,250 already paid.

On December 17, 1907, the board of directors of appellee company adopted the following resolution:

"Whereas, Kay Wood, of Chicago, Illinois, did heretofore subscribe for twenty-five shares, of the par value of one hundred dollars ($100) each, of the increase of the capital stock of Universal Adding Machine Company from seven hundred and fifty thousand dollars ($750,000) to one million dollars ($1,000,000), the amount of his said subscription being twenty-five

hundred dollars ($2,500); and whereas, the said Kay Wood has heretofore paid on account of his said subscription the sum of twelve hundred and fifty dollars ($1,250), but declines and neglects to pay the balance thereof, to wit: the sum of twelve hundred and fifty dollars ($1,250), although the same is past due and payable.

"Now, THEREFORE, be it, and it is hereby resolved, that the said Kay Wood be, and is hereby required to pay said unpaid balance on his said subscription on the thirtieth day of December, 1907, and that in the event that he shall decline or neglect to pay said balance on said date, said twenty-five (25) shares of stock, subscribed for by him as aforesaid, and his said payment of twelve hundred and fifty dollars ($1,250) thereon, be forfeited to the use of the said Universal Adding Machine Company; and that a notice in writing, be served him by depositing the same in the post-office in the City of St. Louis, Missouri, properly directed to him at Chicago, Illinois, stating that he is required to make payment of said balance on the fifth day of March, 1908, at the office of the Universal Adding Machine Company, No. 3807 Laclede avenue, in the City of St. Louis, Missouri, and that if he fails to make the same, said twenty-five (25) shares of stock and his said payment of twelve hundred and fifty dollars ($1,250) thereon will be forfeited for the use of the Universal Adding Machine Company."

During the time covered by these transactions, there was in force in the State of Missouri the following statute:

"SECTION 961. CAPITAL STOCK TO BE PAID, IN WHAT MANNER.

The Board of Directors, trustees or other body of persons lawfully exercising the corporate powers of any corporation, may require the subscribers to the capital stock of the company to pay the amount by them respectively subscribed, in such manner and in such installments as may be required by the by-laws. If any stockholder shall neglect to pay any installments, as required by a resolution of the board of di-

354 APPELLATE COURTS OF ILLINOIS.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

rectors, or persons exercising the corporate powers of such corporation, the directors or other persons exercising such corporate powers may declare his stock and all previous payments forfeited to the use of the company; but no stock shall be forfeited until they shall have caused a notice in writing to be served on him personally, or by depositing the same in the postoffice, properly directed to him, at the postoffice nearest his usual place of residence, stating that he is required to make such payment at the time and place specified in said notice, and that if he fails to make the same, his stock, and all previous payments thereon, will be forfeited for the use of the company, which notice may be served as aforesaid, at least sixty days previous to the day on which such payment is required to be made.''

Appellant did not pay the $1,250 on March 3, 1908, or at any other time. This suit is begun by appellant in the Municipal Court to recover the $1,250 paid on stock subscribed for. The declaration is in six counts.

In the first and second counts it is alleged that the foreign patents agreed to be assigned for the benefit of the subscribers of the 2,500 shares of additional stock have not been so assigned. In the third and fourth counts it is alleged that the $1,250 was paid on the subscription contract set out; that no demand for the payment of the ten dollar installments was ever made in accordance with the terms of the subscription contract, but that the $1,250 was unlawfully forfeited by defendant. In the fifth count it is averred that the proposed increased issue of stock was never effectuated; but this count was abandoned by appellant. The sixth count is the consolidated common counts with a bill of particulars setting out that the $1,250 was paid by appellant to appellee, subject to the conditions of the subscription contract, which conditions had not been performed in that the patents were not assigned, or the stock issued, as stipulated, but that the contract was repudiated. The plea of general issue was inter-

posed to each count of the declaration. The case was tried by the court without a jury. The judgment was for the defendant.

In the declaration of trust executed by the assignee of the patents, he undertook to construe the trust both as to the usees and uses, but appellee disclaims all responsibility for that instrument, and there is nothing in the record to show that it was made at the instance, or with the knowledge or consent of either of the parties to the subscription contract. Appellee contends, and we think correctly so, that the trustee was neither required nor authorized to execute this declaration of trust. So far as can be gathered from the record, the execution of this declaration of trust, as well as the construction in it placed upon the assignment of patents by the trustee, with reference to the questions as to whose use, for what uses, and upon what conditions the trust was held by him, were purely spontaneous and officious acts, and inasmuch as the same is not in accord with the terms either of the assignment or of the subscription contract, and were wholly unauthorized, it is difficult to conceive how either of the parties can be bound by it, or how the courts can consider it in determining their rights, or as taking anything from or adding anything to the assignment of patents, as executed and delivered. Whether the assignment so executed and delivered is the one contemplated by the parties to the subscription contract must be determined from a construction of those two papers.

By the terms of the subscription for stock, it was expressly agreed that on or before March 1, 1907, all foreign patents should be assigned absolutely to James H. Eckels, or to some one whom he should designate "in trust *for the beneficial use and ownership*" of the subscribers to the 2,500 shares of additional stock, "*in proportion to their respective subscriptions and payments for shares, etc.*" The assign-

356     APPELLATE COURTS OF ILLINOIS.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

ment of all such foreign patents was in fact made within the time limited in the stipulation to the person designated by James H. Eckels, as trustee, but there is absolutely nothing in that deed of assignment to indicate for whose use or for what use the foreign patents were to be held by the trustee. Neither the appellant nor any of his associates who had signed the subscriptions for the shares of stock, nor the subscriptions that they had signed for such stock, nor the uses for which the same were assigned, were in any way mentioned or referred to in this assignment. So far as anything in that assignment shows, it might well have been intended as an assignment for the use and benefit of an entirely different set of men, or for entirely different uses than those mentioned in the subscriptions for stock involved here. The mere fact that the patents were assigned to the proper individual as trustee cannot, by any rule of construction, be held to be an assignment for the benefit of the particular persons or for the particular uses mentioned in the subscription contract.

If it could be held that the declaration of trust referred to could be construed to be part of the assignment of the patents, or to limit the trust to the usees or uses for which, and the conditions subject to which, it was held, the situation would not be relieved, for while it declares the title to the patents to be held for the use of the signers of the subscription contracts, it further declares it to be held *subject to the payment of the full sum of two hundred and fifty thousand dollars* by such subscribers of stock, while by the contract of subscription, it was manifestly intended to be held as a protection and security to such subscribers for any partial payments on such stock that should be made by them, or, as expressed in the subscription contract, "In trust for the beneficial use and ownership of such subscribers in proportion as their respective subscriptions for shares shall bear to the sum of $250,-

Chicago—First District—December, 1911.   357

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

000," and for a return to them of such partial payments in case the Machine Company should become liable to return the same, as it was as security for the entire amount that should be invested in the venture. The contention made by appellee that so far as the declaration of assignment is in conformity with the contract of subscription, it should be held to explain or limit the trust, while so much of it as is not in conformity with such contract should be disregarded as surplusage, is not supported by either reason or authority. The fact that the trustee apparently guessed right about part of what the assignors likely intended by their deed of assignment can have no more legal significance than the fact that he guessed manifestly wrong as to the balance. It was in either case a mere guess or opinion authorized by no one and binding on no one.

It is suggested by counsel for appellee that the declaration of trust should be considered as an admission by the trustee "of the terms and conditions under which he held the foreign patents." Even if he were a party to this suit, or was authorized to bind either of the parties to the suit by his admissions, the whole of his admissions should be taken together, and when so considered, would be an admission that he held the patents in trust for the subscribers of the 2,500 shares of stock, *subject to the payment of the full sum of $250,000,* which was not in accordance with the subscription contract. We are, therefore, inclined to hold that the assignment of the patents made was not the one contemplated by the parties in their subscription contract, and that no such assignment as was contemplated was made before March 1, 1907, or at any time.

In the contract of subscription it was stipulated that if * * * "said assignment and transfer of said foreign patents is not made, as hereinbefore provided, on or before the first day of March, nineteen hundred and seven (1907) then my subscription hereunder shall be

358 APPELLATE COURTS OF ILLINOIS.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

null and void, and all moneys paid by me hereunder on account thereof to said Machine Company shall forthwith thereafter be refunded to me on demand." Appellant having demanded the return of the money advanced, after the time had expired for the making of the assignment of the patents for his use, without such assignment having been made according to the terms of the subscription contract, he was entitled to its return.

Notwithstanding the fact that appellee had failed to make the assignment of the foreign patents in conformity to the terms of the subscription contract, its directors on the 17th day of December, 1907, passed the resolution above quoted, by which resolution appellee undertook to determine that appellant was in default in not paying the $1,250 still unpaid on his subscription, and to provide that in case it was not paid by December 30, 1907, the $50 per share already paid, as well as the stock subscribed for, would be forfeited to the appellee company. As to whether this proposed forfeiture was ever completed, the record is silent, but counsel for appellee says in his argument that the stock subscribed for by appellant was sold by appellee, and whether it was forfeited to the company before it was sold is immaterial to appellant or to the determination of this case, for in any event appellee, predicating its conduct on the supposed default of appellant in failing to pay the unpaid $1,250 on what appellee construes to be a proper demand, confessedly sold the stock and thereby placed it beyond its power to complete the sale to appellant by delivering the same to him.

The section of the Missouri statute under which appellee assumed to act in passing the resolution above referred to was introduced in evidence and is above quoted in full. By reference to it, it will be seen that it is therein provided that the board of directors of corporations may require the subscribers

to the capital stock to pay the amount subscribed by them *"in such manner and in such installments as may be required by the by-laws,"* in default of which payment the same may be forfeited. The by-laws of appellee were not introduced in evidence, so that it is impossible for this court to say that any of the by-laws of the company had been violated, or whether appellee had a legal right to forfeit the stock. It may, however, be safely assumed that no by-laws existed that could make a new contract for the parties, or require the payment for shares of stock subscribed for, at a different time or under different circumstances than was expressly provided for in the subscription contract. By that contract it was expressly stipulated that the subscriber obligated himself to pay for the stock, *"$100 per share in installments as follows, to wit: a first installment of fifty dollars ($50) per share payable on demand made by said James H. Eckels, and five (5) subsequent installments of ten dollars ($10) per share each, at intervals of not less than thirty (30) days each."* Demand for the first installment of $50 per share was duly made and that installment was paid by appellant. On April 13, 1907, a demand was made in writing by Mr. Eckels for the payment at once in one installment, upon the receipt of the demand, of the unpaid balance of $50 per share. Just what reason moved the subscribers for this stock to provide in their subscriptions that the last $50 per share should be paid in five equal installments of $10 per share, and at intervals of not less than thirty days each and then on demand, the record does not disclose, although a number of sufficient reasons can easily be conceived. Nor is it important here to determine why the contract was so framed. We must take the contract as we find it. The provision referred to is a part and a material part of the contract. How and when the payments for the stock shall mature and be made is of the essence of the contract. The demand for the payment of all these

360    APPELLATE COURTS OF ILLINOIS.

Wood v. Universal Adding Mach. Co., 166 Ill. App. 346.

installments at one time and that at once was not according to the terms of the contract, and could not operate to make all those installments due on the receipt of that demand, and the failure of appellant to comply with that demand did not operate to make him in default. Spangler v. Indiana & Illinois Ry. Co., 21 Ill. 275.

Besides this, on the 13th day of April, 1907, the time for the assignment of the foreign patents had elapsed, and as we have seen, no such assignment as was provided for in the subscription contract had been made, and appellee was itself in default, and had no right to demand the unpaid balance of $1,250, either in a lump sum or in installments, and appellant was under no obligation to pay, even if the demand had been made in strict conformity to the terms of the contract.

Having sold to others the shares of stock subscribed for by appellant, on the mistaken assumption that he was in default in not complying with the demand of April 13, 1907, appellee placed appellant in the position of electing whether he would treat the contract as rescinded and sue for a return of the money paid; treat it as repudiated and sue for damages for its breach; or treat it as alive and sue for performance. Lake Shore & Mich. So. Ry. v. Richards, 152 Ill. 59. He exercised this election by treating it as rescinded and beginning this suit for a recovery of the money already paid. This he had a right to do. Ballance v. Vanuxem et al., 191 Ill. 319.

Appellant had a clear right to recover on two theories: *First,* under the terms of the contract by which it was provided that in case the foreign patents were not assigned by March 1, 1907, his subscription should be void and all moneys paid thereunder should be refunded; and *second,* on the repudiation of the contract by its acts, appellee was bound to return the $1,250 received on it, regardless of any stipulation in the contract so to do.

What has been said disposes of all material ques-
tions presented by the argument of counsel.   The
judgment of the Municipal Court was against appel-
lant (the plaintiff below) for costs.   This was error.
On the record presented the judgment of that court
should have been in favor of appellant, and against
appellee for $1,250, and interest at the rate of 5 per
cent per annum from April 18, 1907, the date of appel-
lant's demand for the return of the $1,250 advanced.
The judgment of the Municipal Court is, therefore, re-
versed and judgment is entered here in favor of appel-
lant and against appellee for $1,538.78, which includes
interest at 5 per cent per annum from April 18, 1907,
to date, and for costs in both courts.

*Judgment reversed.*