## BEAUMONT HOTEL CO. v. CASWELL et al. (No. 1748.)

Court of Civil Appeals of Texas. Beaumont. Feb. 22, 1929.

Rehearing Denied March 6, 1929.

Gordon, Lawhon, Davidson & Sharfstein, of Beaumont, for appellant.

Blain & Jones, of Beaumont, for appellees.

O'QUINN, J. Mrs. Ruth Caswell, joined pro forma by her husband, George W. Caswell, sued the appellant, alleging that in 1919 the appellant corporation was organized, and that stock subscriptions were taken by Beaumont citizens, among which was a $2,500 subscription in the name of George W. Caswell for himself and another in like amount in the name of George Caswell, but for the use and benefit of his wife, Ruth Caswell, and that on May 15, 1919, he delivered to the trustees, officers, or other persons authorized thereunto, Liberty bonds of the United States of the par value of $2,500, in payment of his wife's subscription, but that a corporation was later organized, and said corporation refused to issue the stock to his said wife, but converted the said Liberty bonds to its own use and benefit, to her damage in the sum of $5,000.

The defendant, appellant, answered by general demurrer and special exception that the plaintiff Ruth Caswell was not alleged to have subscribed for any stock or contracted therefor, and that her petition did not allege when or to whom the Liberty bonds were delivered or with whom such understanding about their ownership was had, or whether such understanding was oral or written, nor the representative, officer, or agent of such corporation who made such agreement. Defendant, appellant, further answered by general denial, and specially denied all of plaintiffs' allegations that it received Liberty bonds in payment for any stock subscription by or for Mrs. Ruth Caswell, and denied that it knew anything of her or any one for her ever having subscribed for said stock. Further answering, defendant, appellant, alleged that George Caswell subscribed for $5,000 of stock and paid one-half thereof with Liberty bonds, and that he having failed and refused to pay the other one-half of such stock subscription, his entire stock was forfeited, as provided by law; that his entire subscription in the sum of $5,000 was taken in his own name, without any agreement with or concerning Ruth Caswell, and pleaded estoppel against Mrs. Caswell. Defendant, appellant, further alleged that no authorized agent or officer of appellant made any such agreement with Mrs. Caswell. By cross-action, appellant sued George Caswell on a note executed by him in the sum of $2,500 payable to appellant, alleged to have been given for the unpaid portion of the alleged $5,000 stock subscription by him.

Appellees, by supplemental petition, demurred generally to appellant's answer and cross-action, and specially that it showed no equity and was barred by limitation. They denied all of the allegations of appellant's answer, and alleged that the Liberty bonds delivered to appellant were taken by appellant with full knowledge that they were the property of and belonged to Mrs. Ruth Caswell and were not the property of George Caswell. They fully answered as to the cross-action against George Caswell.

The cause was tried to a jury, and at the close of plaintiffs' evidence, and again at the close of all the evidence, appellant moved for an instructed verdict in its favor, both of which were denied, and the cause was submitted to the jury on special issues, in answer to which the jury found: (a) That George W. Caswell subscribed for 25 shares of stock for the benefit of his wife, Ruth Caswell; (b) that at the time of such subscription he informed the person who took said subscription that same was for the benefit of his wife, Mrs. Ruth Caswell; (c) that he at said time informed the person taking said subscription that same would be paid for with Liberty bonds belonging to Mrs. Ruth Caswell; (d) that said stock so subscribed for was actually paid for with Liberty bonds belonging to Mrs. Ruth Caswell; and (e) that before said stock was forfeited by appellant, appellant knew that Mrs. Caswell was claiming that she owned the 25 shares of stock that had been paid for with her Liberty bonds. In answer to special issue A requested by appellant, the jury found that George Caswell did not subscribe for 50 shares of stock.

On the answers of the jury the court rendered judgment in favor of Mrs. Caswell against appellant for $2,500, with 6 per cent. interest from May 15, 1919, and that appellant take nothing by virtue of its cross-action against George W. Caswell. Motion for a new trial was overruled, and appellant has brought this appeal.

By several propositions appellant complains that the court erred in not sustaining its general demurrer and certain special exceptions to plaintiffs' petition. These propositions are overruled. We think the allegations of the petition are sufficient.

Appellant's contention that the court erred in refusing its motion for an instructed verdict because there was a fatal variance be-

tween the allegations of the plaintiffs' petition and their proof, in that the petition alleged one state of facts and their proof showed an entirely different state of facts, is overruled. The allegations have support in the evidence.

By its sixth proposition appellant challenges the right of appellees to sue for the value of the bonds delivered in payment for stock, and insists that plaintiffs' cause of action, if any they had, was for the stock or its market value, or for the return of the bonds, and as there was no pleading therefor and no submission to or finding by the jury thereon, and no evidence as to the value of anything but the bonds, the judgment is erroneous. This contention cannot be sustained. It is well settled that where one subscribes for stock in a corporation and pays the price of same, and the corporation fails or refuses to deliver to the purchaser his certificate of stock, an action in assumpsit at law will lie against the corporation to recover the consideration paid. 14 C. J. 486; Ferrell v. Millican (Tex. Civ. App.) 156 S. W. 230; Watkins v. Record Photographing Abstract Co., 76 Or. 421, 149 P. 478; Kinser v. Cowie, 235 Ill. 383, 85 N. E. 623, 126 Am. St. Rep. 221; Swazey v. Choate Mfg. Co., 48 N. H. 200; Wood v. Universal Adding Machine Co., 166 Ill. App. 346. The record discloses that promoters of appellant solicited George W. Caswell to subscribe for stock, and that he did subscribe for 25 shares of the par value of $2,500. Later he was again solicited, and, as found by the jury, subscribed for 25 more shares, these for his wife, Ruth Caswell, to be paid for in Liberty bonds at their face value; that Liberty bonds in the sum of $2,500 belonging to Mrs. Caswell were delivered to appellant and accepted by appellant in payment for said 25 shares of stock, with knowledge that same was for the benefit of Mrs. Caswell, and that said stock so paid for belonged to her. Later, appellant contending that the two subscriptions for 25 shares each constituted a subscription by George W. Caswell for 50 shares, and that said Liberty bonds were to be applied in payment for one-half of said subscription, and Caswell having failed to pay the balance of his subscription, appellant forfeited all of said stock and refused to recognize Mrs. Caswell as the owner of any of said stock, or that she had any right or claim thereto. The jury found that at the time of said forfeiture, and prior thereto, appellant knew that Mrs. Caswell was claiming that she was the owner of 25 shares of stock that had been paid for with her Liberty bonds. The jury also found that George W. Caswell did not subscribe for 50 shares of stock. None of these findings are attacked by appellant as being without support in the evidence. Under these facts, appellees were entitled to maintain their suit.

Appellant's objection to and criticism of special issues Nos. 3 and 5 are not well taken and are overruled.

Appellant's tenth and eleventh propositions, complaining of the admission of certain evidence, are overruled.

We now come to appellant's contention that there being no pleading or legal evidence as to the market value of the Liberty bonds, and no submission to or finding by the jury thereon, under the facts, the judgment against appellant for $2,500 and interest is erroneous and excessive. No issue as to the market value of the bonds was submitted to the jury, and the court in his judgment does not find the market value of same, unless the fact that he rendered judgment for their par value is such finding, and, if so, then it is not supported by the evidence, for there is no evidence that these or any of the many other Liberty bonds taken in payment for stock by appellant sold for par, but, to the contrary, the evidence is that they all sold for less than par. Appellees insist that, as appellant contracted to and did accept said bonds at par in payment for stock, that established their actual value, and that they are entitled to judgment accordingly. Where the officers of a corporation refuse to issue a certificate of stock to a person entitled thereto, he has a remedy by action against the corporation for damages as for a conversion of the stock, or he may sue in equity for specific performance to enforce the issue and delivery of the stock certificate and the payment of any dividends that may be due thereon, or he may, as plaintiffs have here done, sue to recover the consideration paid for the stock. This not being a suit for the enforcement of the contract, appellees cannot claim the benefit of any of the terms of the contract. This is a suit for the conversion of the bonds, and the rule is well established that in suits for conversion of property the recovery must be for its market cash value at the time of the conversion. Appellant's president, R. C. Miller, who was also a prominent promoter in securing subscriptions for the stock of and in organizing the appellant corporation, testified that he did not know for what amount the bonds of Mrs. Caswell were sold, but that appellant sold many such bonds taken for payment of stock, and that none of them sold for par, but that all of them sold for less than par, some for 12½ per cent. discount and others for "less than 12½ per cent. discount." We think the court erred in rendering judgment for the par value of the bonds. This would cause a reversal and remanding of the case for the purpose of establishing the market value of the bonds at the time of their conversion, May 15, 1919; but appellees, in the presentation of the case on submission, stated that if the court should hold that they were not entitled to recover the par value of the bonds, rather than have the delay and cost of another trial

they asked the court to reform the judgment giving them judgment for the lowest value for which any of the bonds were shown to have been sold, to wit, 87½ cents on the dollar, and as that was the lowest price for which any of the Liberty bonds was shown to have been sold, we accede to that request and here reform the judgment so that appellees recover judgment against appellant for the $2,500 worth of bonds at the rate of 87½—12½ per cent. discount—amounting to $2,187.50, together with interest thereon at the rate of 6 per cent. per annum from May 15, 1919, the date said bonds were delivered to and accepted by appellant. The costs of this appeal are taxed against appellees.

Reformed and affirmed.

HIGHTOWER, C. J. I agree with the disposition made of this appeal as reflected by the opinion of Mr. Justice O'QUINN. I do not feel sure, however, that under the facts of this particular case the burden rested upon the appellees to make proof of the market value of Mrs. Caswell's Liberty bonds at the time they were converted by appellant. I do not disagree with the statement in the opinion of Mr. Justice O'QUINN that as a general rule a plaintiff suing for the conversion of property has the burden of proving the market value, if any, of the property at the date of its conversion by the defendant, but I do entertain some doubt as to whether that burden rested upon the plaintiffs in this case, and am rather inclined to the opinion that the appellees here made a prima facie case for recovery of the value of Mrs. Caswell's Liberty bonds, at the date they were delivered to appellant with the understanding and agreement between the parties as to the value of the bonds and that appellant would issue stock in its corporation in payment for the bonds. I do not desire to go into further detail in this matter, but merely wish to reserve my views on this question at this time.