**J. L. PATTERSON, Jr., Appellant,**

v.

**Jerold WIZOWATY et al., Appellees.**

**No. 924.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 23, 1974.

Gary D. Aguren, Minter & Mahon, Houston, for appellant.

John K. Meyer, Robert A. Hasty, Jr., Hinds & Meyer, Houston, for appellees.

COULSON, Justice.

This is a stock conversion suit against J. L. Patterson, Jr., appellant, brought by Jerold Wizowaty, Stuart Schube, and Charles Van Tassel, appellees. The district court entered judgment against appellant.

The three appellees formed a partnership called Concertina and entered into an oral agreement with appellant, as secretary and representative of the HLJ Corporation, to purchase six thousand shares of stock of HLJ for $6,000. Appellees alleged that their agreement contemplated that HLJ would subsequently purchase $6,000 worth of stock in International Artists Producing Corporation. The check for $6,000, payable to HLJ, was drawn on the bank account of Wizowaty, received by appellant, and deposited by him in HLJ's account. A notation on the face of the check stated: "For purchase of 6000 shares in HLJ Corporation on behalf of CONCERTINA, a Texas partnership." The next day, appellant drew a check against HLJ for $6,000 payable to International Artists. Wizowaty repeatedly made demand for the stock on appellant, but no stock was ever delivered to any of the appellees. Appellees sued HLJ and appellant, alleging alternatively fraudulent conversion, breach of contract, and rescission. Default judgment was entered against HLJ, and a severance was ordered as to Patterson. Trial was to the court, which entered findings of fact and conclusions of law. The court found

that appellant was the secretary as well as a director of HLJ, that the check was delivered and deposited in HLJ's bank account, and that appellant was an officer, director, and substantial shareholder in International Artists. It also found that no stock certificates were ever delivered to appellees nor were any ever issued to anyone and that HLJ was a "paper" corporation operated by appellant. Appellant was found to have promised to issue the stock without any intention of fulfilling his promise, which promise was a material inducement to appellees' agreement to pay $6,000. The trial court's conclusions of law state that HLJ had converted the stock, that HLJ was the alter ego of appellant, and that appellant knowingly participated in the conversion and in the fraud. The trial judge rejected appellant's additional requested finding of fact that appellees had waited an unreasonable length of time to rescind the agreement, but the court did additionally find that no evidence was presented as to the market value of the stock of any company. The court also found that no stock certificates or stock record books of HLJ and International Artists ever existed.

■ Appellant brings ten points of error. The first point is that the trial court erred in entering judgment for appellees, because there was no evidence of market value upon which to base damages under the theory of fraudulent conversion. We agree.

■ The measure of damage in a stock conversion suit is the market value of the stock at the time of the conversion. City National Bank in Wichita Falls v. Kiel, 348 S.W.2d 260 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n. r. e.). If the conversion of the stock is attended by fraud, wilful wrong, or gross negligence, then the measure of damages is the highest market value between the date of the conversion and the filing of suit. Ligon v. E. F. Hutton & Company, 428 S.W.2d 434 (Tex.Civ.App.—Dallas 1968, writ ref'd n.

r. e.). Although the question has not been addressed in Texas, many states apply the rule in stock conversion cases that when the plaintiff establishes that no market exists for the stock or that it has never been offered for sale, the measure of damages is the stock's actual value, i. e. the price a buyer would pay taking into consideration the original capital, assets and liabilites, and similar factors. Annot., 31 A.L.R.3d 1286, 1295 (1970).

■ Appellees' petition alleges that, after the fraudulent conversion and before the filing of suit, the market value of their alleged shares in HLJ or International Artists was $10,250. However, the trial court specifically found that no evidence was presented of the market value of any stock at any material time. Appellees argue that, since the stock certificates and stock books were found never to have existed, the market value "must be inferred from the terms of the bargain." No authority is cited for this proposition; on the contrary, if the consideration paid were circumstantial evidence of market value, then the requirement that market value at the time of the conversion be established would be rendered meaningless as the measure of damages. Appellees assert that the consideration itself rather than the stock may be treated as the object of the conversion under the authority of Beaumont Hotel Co. v. Caswell, 14 S.W.2d 292 (Tex. Civ.App.—Beaumont 1929, no writ). However, while this is a distinctly separate theory of recovery, the appellees' petition alleged conversion of the stock, and the trial court in its conclusions of law found a conversion of the stock.

■ Appellees assert that the trial court also found rescission, in which the measure of damages is the consideration paid. The trial judge found that HLJ was the alter ego of appellant and rejected appellant's additional requested finding of fact that appellees had waited an unreasonable length of time in order to rescind. Assuming the trial court found the contract to be

rescinded, there are two fatal defects to the rescission theory as applied here. First, this Court in George v. Houston Boxing Club, Inc., 423 S.W.2d 128 (Tex. Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.), pointed out that there is no Texas authority for the proposition that an individual can be held personally liable under the alter ego doctrine when he owns none of the outstanding stock of the corporation. In the instant case, the only testimony on this point was appellant's testimony that he had never owned any stock in HLJ. Second, a basic corollary to the equitable right of rescission is the principle that rescission is not ordinarily available if an action for damages at law provides an adequate remedy. Appellees had adequate remedies at law under the theories of conversion of the stock or of the consideration.

 Since this case must be reversed, we believe it should be remanded for a new trial in the interest of justice. The trial judge specifically found that no stock certificates in HLJ were ever issued. This is strong evidence that HLJ never became an active corporation nor received consideration for which it issued stock. If there was never any equity or stock in this corporation to be owned, appellees' suit for conversion of stock was based upon a wrong theory of law, unlike the typical stock conversion case which involves the conversion of stock in a functioning corporation, e. g., Ligon v. E. F. Hutton & Company, supra. Under the facts developed below, appellees probably could have plead another cause of action, such as fraud or fraudulent conversion of the consideration. If a case must be reversed, a court of civil appeals has the discretion to remand it for a new trial in the interest of justice when it was tried on the wrong theory. Texas Rules of Civil Procedure 434; Morrow v. Shotwell, 477 S.W.2d 538 (Tex.Sup.1972). Since appellees sued on a wrong theory of law and the record does not affirmatively show that they could not have recovered under a correct theory, this Court believes that the facts of this case demand that it be remanded for a new trial.

Reversed and remanded.