W. G. HORNE, III, Appellant,

v.

SALADO CREEK DEVELOPMENT CO. et al., Appellees.

No. 8153.

Court of Civil Appeals of Texas, Beaumont.

Dec. 28, 1978.

Rehearing Denied Jan. 18, 1979.

**660**

Darryl Fanelli, Houston, W. H. Ferguson, San Antonio, for appellant.

Stanley D. Rosenberg, Mary Beth Carmody, James R. Warncke, John Oliver, San Antonio, for appellees.

CLAYTON, Justice.

Plaintiffs Gus Preissman and wife, Thelma Preissman, Ben Katz, John Oliver and James Warncke brought this action against Salado Creek Development Co., Moses Musquiz, Jr., W. G. Horne, III, and Continental Bank of Texas, seeking recovery upon a promissory note in the original amount of $1,044,875, executed by defendant Salado Creek Development Company, co-signed by Moses Musquiz, Jr., and co-signed by W. G. Horne, III, with an express recitation that his (Horne's) personal liability extended only to the amount of $410,000. Plaintiffs also sought damages for fraud and deceit resulting in the execution of a subordination agreement by plaintiffs. By separate proceedings, Continental Bank is no longer a party to this action. Upon a jury trial, the court entered judgment for plaintiffs as against all named defendants (excluding the Bank) in the amount of $981,808.51. Defendant Horne has perfected this appeal from such judgment. Salado Creek, Moses Musquiz, Jr., have not appealed.

There are many transactions appearing in the record between the parties, and others not parties to this action, which we deem unnecessary to recite. The transactions relevant to this appeal are as follows:

On December 26, 1973, plaintiffs (Preissmans and Katz) sold to Horne a certain 96-acre tract of land by warranty deed retaining a vendor's lien, and a Deed of Trust was executed to secure the payment of a promissory note in the sum of $1,044,875, such note payable to Preissmans and Katz, and signed by Salado Creek, Musquiz, and Horne (who signed with no personal liability). Horne then executed a warranty deed, retaining a vendor's lien, with a promissory note from Salado Creek to Horne in the sum of $1,500,000. (This note was later transferred to Continental Bank.) Horne signed a "guaranty" to plaintiffs for the $410,000 payment due on the first note (Horne's note) due on January 4, 1974. (This payment was subsequently made.)

Plaintiffs (Preissmans and Katz) executed a subordination agreement to the effect that their lien, retained by them in

their sale to Horne, would become a secondary lien to the lien created by the sale of the land by Horne to Salado Creek (the $1,500,000 note from Salado to Horne). The execution of this agreement, and the reasons for such execution, forms the basis for this cause of action based upon fraud and deceit.

In January 1974, Horne applied for a commercial loan from the Continental Bank. In this transaction Horne transferred the note he received from Salado Creek for the sale of the land. From this loan, Horne received $800,000 in the form of $410,000 cash (which was paid by the Bank to plaintiffs as payment on Horne's note to them), and the remainder was retained by the Bank in the form of certificates of deposit. After the January 1974 payment was made on plaintiff's note from Horne, no further payments were made. On October 1, 1974, the Bank foreclosed on the property securing Horne's note to it for $1,500,000. Horne later reacquired the property and subsequently resold it for $1,450,000.

Plaintiffs filed this action on the promissory note signed by defendants and, in addition thereto, sought damages arising from fraudulent representations made by Horne inducing plaintiffs to execute the subordination agreement. The evidence presented was sufficient to raise the issue to be determined by the jury. Horne made certain false representations to plaintiffs to induce them to sign the agreement.

The agreement, in effect, permitted the lien retained by Horne in its sale to Salado Creek to be a first lien against the property and that plaintiffs' lien would be secondary, permitting Horne then to borrow money from the Bank so that the Bank could, through transfer of Horne's note and vendor's lien, obtain a primary lien upon the property.

The jury returned a verdict, finding, as to Horne, that defendant Horne committed fraud in obtaining the execution of the subordination agreement by plaintiffs, and that as a result of such fraud incurred damages in the amount of $750,000. In view of our disposition of this appeal, the other findings made by the jury are immaterial.

Plaintiffs filed a motion for judgment, and in such motion specifically requested the court to disregard the jury's answer to Special Issue No. 4 inquiring as to damages resulting from Horne's fraud to which they answered $750,000 for the reason that such damages "are so wholly contrary to the great weight and overwhelming preponderance of the evidence as to be clearly wrong, manifestly unjust, and shocking to the conscience, in that the plaintiffs' damage, sustained by the false representation of HORNE, was the loss of their security, securing the note in question, and, accordingly, the amount of their damages must be equal to the amount of the note in question, with full interest and attorneys' fees."

The judgment actually signed and entered by the court recites therein that "the . . . answers to Special Issue No. 4 . . . is hereby disregarded by the Court, as the Court finds that the amount of the plaintiffs' damage as a result of executing the subordination agreement must necessarily be the same as and equal to the total amount of money, principal, interest and attorneys' fees due upon the note that was secured by the lien subordinated herein, as a matter of law . . ." and thereupon assessed damages, based upon such findings in the same amount as that due upon the note.

Appellant urges in his fourth point that "the trial court erred in holding as a matter of law that the amount of plaintiffs' damages must necessarily have been the same as the total amount of the note."

Plaintiffs sued for damages resulting from the fraudulent acts of Horne. The loss sustained by plaintiffs was the loss of a first or primary lien. The loss complained of by plaintiffs was that their lien was actually reduced to a secondary lien. The only value of the lien was the security it gave to them for foreclosing on the property subject to the lien and to sell it and apply the proceeds to the payment of the note.

The sale of the property could possibly produce proceeds sufficient to satisfy the total indebtedness or only a part thereof. The land itself is the security for the payment of the indebtedness. In losing such security as a result of the fraud, the damages sustained by plaintiffs would be the loss of the land and would not be the total amount of the indebtedness. The indebtedness, evidenced by the note, would be outstanding regardless of the disposition of the land.

To determine their loss or damages, plaintiffs must prove the market value of the land involved. The proper measure of damages must encompass the market value of the land, or pleading and proof of a pecuniary loss, directly traceable to the wrongful act complained of and to be the proximate result thereof. See *Success Motivation Institute, Inc. v. Lawlis,* 503 S.W.2d 864 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.); *Frey v. Martin,* 469 S.W.2d 316 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.); *El Paso Development Company v. Ravel,* 339 S.W.2d 360 (Tex.Civ.App.—El Paso 1960, writ ref'd n. r. e.); *Patterson v. Wizowaty,* 505 S.W.2d 425 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ).

The court, in setting aside the damages as found by the jury, and entering judgment in the amount of the note, applied an erroneous measure of damages. It cannot be said that the court entered judgment upon the note because the express request of plaintiffs in their motion for judgment, and the action of the court in disregarding the findings of the jury and the express finding of the court in assessing damages and entering judgment thereon, conclusively show that, as plaintiffs admit in their brief, "[T]he court found the amount of damages must necessarily be equal to the total amount of money, principal, interest, and attorney fees. . . . " The court's action concerned the measure of damages resulting from fraud, and the court did not enter judgment based upon the liability arising from the note.

Because of the error of the trial court, this cause must be reversed and remanded as to Horne. The judgment as to the other non-appealing parties will not be disturbed.

REVERSED and REMANDED.