MADIRI 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00158-CV






Madiri Holdings, Inc., Appellant



v.



Martha Dianne Rice, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. C-93-0472C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING






 

 Appellee Martha Dianne Rice ("Dianne Rice") filed an action for declaratory
judgment seeking to establish, among other things, that appellant Madiri Holdings, Inc. ("Madiri")
is the alter ego of Ken Rice and is therefore liable for the debts owed to her by Ken Rice. Madiri
now appeals from a judgment of the trial court that it is the alter ego of Ken Rice. We will
affirm.



BACKGROUND


 In 1986, Dianne and Ken Rice were divorced. In the process of obtaining a
divorce, the couple executed an agreement incident to divorce and approved a proposed decree
granting the divorce and incorporating the terms of their agreement. Ken Rice agreed to make
certain payments to Dianne Rice for her support and maintenance, but later failed to make the
required payments. Dianne Rice obtained a judgment against him, and as a result of the execution
of that judgment, some of Ken Rice's property was foreclosed upon and sold on December 14,
1988 at a sheriff's sale in Comal County. 

 Ken Rice's mother, Kathryn Horne, hired an attorney to attend the sheriff's sale
for the purpose of purchasing Ken's assets. In 1989, Ms. Horne transferred the assets purchased
at the sale to Madiri, which was incorporated by her earlier that same year. Essentially all the
assets or ventures that Ken Rice had been involved in were transferred into Madiri. Then, in
1991, Ken Rice declared bankruptcy in New Mexico. During the course of these 1992 bankruptcy
proceedings, Dianne Rice was awarded a non-dischargeable judgment of $290,000 representing
the maintenance and support payments owed to her by Ken Rice.

 The current conflict centers around Dianne Rice's allegations that Ken Rice and his
mother created and used Madiri as a device to avoid paying Ken's existing debts. Dianne Rice
contends that the corporation was formed as a way for Ken Rice to evade the non-dischargeable
judgment that he owes her. Diane Rice's testimony indicated that the name of the corporation,
Madiri, is composed of certain letter from her own name. The "MA" stands for Martha, the "DI"
stands for Dianne, and the "RI" stands for Rice. At trial, appellee presented evidence that Ken
Rice maintained financial interest in and control over the corporation. The evidence also showed
that Ken Rice possesses all of Madiri's corporate papers, and neither he nor his mother knows
where the actual stock certificates are located. Kathryn Horne's deposition testimony reveals that
the only reason she knows that she owns all the stock in Madiri is because Ken Rice told her that
she does. Madiri paid for Ken Rice's personal expenses, and his mother, the only other officer
and the sole director of Madiri, had no idea how the company's money was being spent or what
real estate or other assets the corporation held. 

 At the time of trial, Ken Rice had made no effort to pay Dianne Rice. The purpose
of this suit is to obtain a declaratory judgment that Madiri is the alter ego of Ken Rice and to hold
Madiri liable for Ken Rice's $290,000 judgment debt. The jury found that Madiri is the alter ego
of Ken Rice, and Madiri appeals that finding in one point of error. 



DISCUSSION


 In its single point of error, Madiri argues that there was no evidence or, in the
alternative, insufficient evidence to support the jury's finding that Madiri is the alter ego of Ken
Rice. When both legal and factual sufficiency challenges are raised on appeal, the court must first
examine the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d
400, 401 (Tex. 1981). In reviewing a challenge to the legal sufficiency of the evidence, the court
is to consider only the evidence and inferences tending to support the jury's findings and disregard
all evidence and inferences to the contrary. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987). 
Specifically, when the evidence offered to prove a vital fact is so weak as to do no more that
create a mere surmise or suspicion of its existence, the evidence is no more that a scintilla and,
in legal effect, is no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). 
However, some evidence does exist if the evidence provides a basis upon which reasonable minds
could reach differing conclusions as to the existence of the vital fact. Id. In reviewing the factual
sufficiency of the evidence, the court must consider and weigh all evidence and should set aside
the judgment only if it is so contrary to the overwhelming weight of the evidence to be clearly
wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 

 This appeal involves the concept of alter ego, specifically reverse alter ego. The
theory of alter ego allows a court to disregard the corporate form and to treat a corporation and
an individual as one and the same. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex.
1990), on remand, 836 S.W.2d 844 (Tex. App.--Houston [1st Dist.] 1992). Alter ego is an
exception to the general rule which forbids disregarding corporate existence. Lucas v. Texas
Indus., Inc., 696 S.W.2d 372, 374 (Tex. 1984). The corporate fiction will normally not be
disregarded, but "when the corporate form has been used as part of a basically unfair device to
achieve an inequitable result," a court is entitled to pierce the corporate veil. Bell Oil & Gas Co.
v. Allied Chem. Corp., 431 S.W.2d 336, 340 (Tex. 1968). In a reverse alter ego situation, a
corporation is held liable because an individual has used the corporate entity to shield his or her
own wrongdoing. See Lane v. Dickinson State Bank, 605 S.W.2d 650, 652 (Tex. Civ.
App.--Houston [1st Dist.] 1980, no writ). Once the corporation and the individual are determined
to be one and the same, the corporation can be held liable for the debts of the individual. Id.

 According to Madiri, Texas courts have held that the reverse alter ego theory is
inapplicable to situations where an individual does not own any of the outstanding stock of the
corporation. See id. at 653; Patterson v. Wizowaty, 505 S.W.2d 425, 428 (Tex. Civ.
App.--Houston [14th Dist.] 1974, no writ); George v. Houston Boxing Club, Inc., 423 S.W.2d
128, 132 (Tex. Civ. App.--Houston [14th Dist.] 1967, writ ref'd n.r.e.). Appellant further points
to opinions of the Fifth Circuit, which have interpreted Texas law as requiring individuals to own
stock in the corporation before subjecting them to the reverse alter ego doctrine. See Premium
Petroleum Co. v. Petros Mexicanos, 934 F.2d 635, 643 (5th Cir. 1991); Zira Spiritual Trust v.
U.S., 910 F.2d 240, 245 (5th Cir. 1990). Madiri argues that no evidence was presented at the
trial to show that Ken Rice owned stock in Madiri and that, as a result, the jury's decision that
Madiri is the alter ego of Ken Rice cannot stand. We disagree.

 Stock ownership is not fundamentally required to support such a holding. See
Mancorp, 802 S.W.2d at 227; Stewart & Stevenson v. Serv-Tech, Inc., 879 S.W.2d 89, 108 (Tex.
App.--Houston [14th Dist.] 1994, writ denied). In Castleberry v. Branscum, 721 S.W.2d 270
(Tex. 1986), the Texas Supreme Court shed some light on the issue of disregarding corporate
fictions. In Castleberry, the supreme court held that alter ego:



is shown from the total dealings of the corporation and the individual, including
the degree to which corporate formalities have been followed and corporate and
individual property have been kept separately, the amount of financial interest,
ownership and control the individual maintains over the corporation, and whether
the corporation has been used for personal purposes. . . . Alter ego's rationale is:
"if the shareholders themselves disregard the separation of the corporate enterprise,
the law will also disregard it so far as necessary to protect individual and corporate
creditors."



Id. at 272 (emphasis added).

 Since Castleberry, other Texas courts have explored the issue of what evidence is
necessary to prove alter ego. See Stewart & Stevenson, 879 S.W.2d at 108; Solomon v.
Greenblatt, 812 S.W.2d 7, 19 (Tex. App.--Dallas 1991, no writ). In Stewart & Stevenson, the
court examined both Texas and federal cases dealing with stock ownership in a reverse alter ego
situation and relied upon the language in Castleberry to determine whether a newly formed
corporation accused of violating trade secrets was really the alter ego of another corporation. 
Stewart & Stevenson, 879 S.W.2d at 108. Although the court in Stewart & Stevenson ultimately
disregarded the jury's finding of alter ego, the court, in determining whether the evidence
supported the finding that the two corporations were alter egos, stated:



We . . . hold that if the basis for disregarding the corporate fiction is alter ego, as
opposed to any of the other bases, it is necessary that there be some financial
interest, ownership or control by the corporation sought to be held liable for the
tort of the other corporation, in the other corporation.



Id. at 108. Based on language in Castleberry and Stewart & Stevenson, actual stock ownership
is not mandatory in a reverse alter ego situation. The focus has instead been shifted to look for
more informal attributes or requirements. Thus, it is only necessary to show that the individual
has demonstrated "some financial interest, ownership, or control" in the corporation in question.

 Courts view the concept of alter ego as an equitable doctrine. "The purpose of the
court in cases of this nature is to prevent use of the corporate entity as a cloak for fraud or
illegality or to work an injustice, and that purpose should not be thwarted by adherence to any
particular theory of liability." Gentry v. Credit Plan Corp. of Houston, 528 S.W.2d 571, 575
(Tex. 1975). In fact, Texas courts take a flexible, fact-specific approach and focus on equity
when considering the piercing of the corporate veil. Castleberry, 721 S.W.2d at 273. 

 The evidence at trial supported the idea that Ken Rice was actually in control of
Madiri and maintained a financial interest in the corporation. Ms. Horne was the full owner of
Madiri, yet she knew nothing about the corporation's assets, operation, or financial data. She was
not in control of the corporation. In fact, Ken Rice wrote all the checks and had free reign over
Madiri's financial affairs. Ken Rice testified that he often stamped his mother's name on checks. 
According to Ms. Horne, she never authorized anyone to stamp her name on Madiri checks, nor was she was even aware of the existence of a signature stamp. Ms. Horne did not 
receive any of Madiri's bank statements before the suit was filed. Also noteworthy is the fact that
Madiri checks had been written to pay for such "corporate" expenses as Ken Rice's personal
automobile, his utility bills, as well as his dues at the Petroleum Club. Ms. Horne testified that
the corporate pickup truck was used for "Whatever it's needed for, whatever Ken Rice needs it
for." 

 The record is full of evidence illustrating that, although Ken Rice did not
technically own any stock in Madiri, he had almost complete control over the corporation along
with a financial interest in the company. Because some evidence does exist to support the jury's
finding that Madiri is that alter ego of Ken Rice and because this evidence is not so contrary to
the overwhelming weight of evidence as to be clearly wrong and unjust, we overrule Ken Rice's
sole point of error.



CONCLUSION


 We affirm the judgment of the trial court.



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: May 8, 1996

Do Not Publish



e amount of financial interest,
ownership and control the individual maintains over the corporation, and whether
the corporation has been used for personal purposes. . . . Alter ego's rationale is:
"if the shareholders themselves disregard the separation of the corporate enterprise,
the law will also disregard it so far as necessary to protect individual and corporate
creditors."



Id. at