In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-02-00364-CV
____________

PAUL GOLDEN, Appellant

v.

STEWART & STEVENSON SERVICES, INC., Appellee




On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 7665*RM99




MEMORANDUM OPINION
           Paul Golden, appellant, was involved in a car accident with Matthew Miles Fuqua, an
employee of Stewart & Stevenson Services, Inc. (Stewart & Stevenson). Appellant filed a
negligence suit against Fuqua and Stewart & Stevenson. Appellant non-suited Fuqua, but
continued his cause of action against Stewart & Stevenson. Following the trial, a jury found
that Fuqua was not negligent and found in favor of Stewart & Stevenson. On appeal,
appellant claims that (1) the jury’s failure to find Fuqua negligent was against the great
weight and preponderance of the evidence and (2) the trial court erred in restricting appellant
from mentioning that he had spoken to Fuqua’s “insurance” representative. We affirm.
Background
           On October 21, 1997, appellant’s van was stopped at a traffic light. Fuqua, in his
truck behind appellant, was also at a complete stop. When Fuqua’s foot slipped off the brake
pedal, the truck moved forward and hit appellant’s van. Appellant claimed that Fuqua was
on a cell phone when the accident occurred. Fuqua denies being on the cell phone and
contends that he used the cell phone after the accident to contact his insurance representative.
           Appellant claimed he was injured. Appellant, complaining of neck pain radiating
down his back, pain in both shoulders, back spasms and headaches, visited Dr. D. Messer
nine days after the accident. Dr. Messer prescribed medication and recommended that
appellant undergo physical therapy with Pete Nash. Appellant claims that, as a result of the
car accident, he suffered a disk herniation, had to have neck surgery on July 19, 1999, and
experienced headaches as a reaction to the surgery.
           At trial, appellant testified that, in December 1996, he fell at his church, tearing his
left shoulder’s rotator cuff. Corrective surgery on appellant’s shoulder was performed in
February 1997 by Dr. K. First, an orthopedic surgeon. Appellant testified that, after his left
shoulder surgery, his right shoulder and hip continued to ache, but he denied having any neck
pain at that time.
           On October 31, 1997, appellant visited Dr. First and expressed concern that the car
accident had re-injured his left shoulder. Based on appellant’s arthogram, Dr. First
determined that there was a tiny tear in appellant’s left rotator cuff and recommended two
months of physical therapy. Appellant stated that, although he continued to attend physical
therapy, as of December 23, 1997, his lower back was worsening and his right shoulder
continued to ache.
           In February 1998, Dr. Messer recommended that appellant obtain an MRI of his neck. 
Dr. Messer referred appellant to Dr. R. Simpson, a neurosurgeon, who determined from the
MRI that appellant had a C-5/6 disk herniation. Appellant testified that he visited a
chiropractor during the summer months of 1998 for his hip problems and recalls also getting
treatment for his back and muscle spasms.
           Appellant further testified that his right hip problem originated from a fall that
occurred in December 1994. Appellant testified that, in December 1998, he slipped in the
bathroom, landing on his right hip and hitting his head. As a result of that fall, appellant saw
Dr. K. Mathis, who performed hip surgery in March 1999.
           Appellant visited Dr. Simpson again in January 1999, and Dr. Simpson recommended
an MRI of the cervical spine. Appellant had neck surgery in July 1999. Appellant continued
to have headaches and back-cramping. Appellant was referred to Dr. H. Derman, a
neurologist, who suggested that appellant undergo a Botox study. Appellant stated that his
headaches continued even after undergoing the study. Appellant underwent more therapy
and trigger-point injections, focusing on his neck. Appellant stated that his neck got better
after the trigger-point injections but that he continued to have headaches.
           On cross-examination, appellant was asked whether he knew the date of the bathroom
incident in which he landed on his hip and hit his head. There was some confusion about
whether appellant had fallen in December 1997, between the time of the car accident and the
first MRI, or had fallen in December 1998, after the first MRI. Appellant contends that the
bathroom incident occurred in December 1998. However, Dr. Mathis’s records showed that
appellant’s bathroom incident occurred in December 1997. Appellant claimed that the date
on Dr. Mathis’s records was simply a mistake appellant had made when filling out the forms. 
However, Dr. Mathis’s narrative explains that appellant “filled out [his medical history] in
his hand-writing and signed it, stating that his date of injury or onset of symptoms was
12/06/97 and was a result of a fall.”
           On cross-examination, appellant denied attributing his lower-back pain to the car
accident and also denied receiving any treatment. However, the chiropractic records showed
that appellant was treated at least 12 times for his lower-back pain. Appellant denied doing
anything that would jolt or jar his neck and that would have contributed to his need for neck
surgery. However, Dr. Mathis’s records showed that, a month before appellant underwent
neck surgery, he had been in New York “walking around on vacation and riding roller
coasters.”
           Dr. Simpson testified by deposition that he first saw appellant in March 1998 and
conducted a fairly comprehensive neurological examination that included a history of events
and circumstances leading up to appellant’s symptoms. Dr. Simpson testified that appellant’s
symptoms—neck pain and headaches—were consistent with the disk herniation that was
shown at C-5/6 on appellant’s MRI scan. Dr. Simpson stated that appellant’s symptoms
could be caused by the disk herniation or a bone spur, which was also shown on the MRI. 
Dr. Simpson stated that if the bone spur existed at the time of the car accident, it may have
been exacerbated by that accident. Dr. Simpson’s medical conclusion was based on the
medical history information he obtained from appellant, who said his symptoms were non-existent prior to the car accident. 
           Dr. Simpson testified that he was not aware that appellant had right hip problems
originating from a fall sometime in December 1994. Dr. Simpson said he was aware,
however, of appellant’s fall that resulted in shoulder surgery. Simpson stated that it was
possible that a fall sufficient to jar both shoulders could jar the neck as well. Dr. Simpson
further testified that appellant’s symptoms could be caused solely by the bony spur or by
improper chiropractic manipulation.
           Simpson stated that based on appellant’s medical history, he would have to assume
that the car accident contributed to his symptoms even though it may not have been the only
cause of appellant’s symptoms. Simpson agreed that he would not be able to objectively
determine the primary causative factor if appellant had at least one subsequent fall or jolt to
his neck.
           Dr. Derman, a neurologist with Baylor College of Medicine, testified, regarding
appellant’s recurring headaches, that it is common for a patient to suffer from headaches after
having had neck surgery. Dr. Derman also testified that, in his opinion, based upon a
reasonable medical probability, appellant’s condition was a result of the car accident. On
cross-examination, however, Dr. Derman agreed that headaches could be a result of a person
falling, landing on his shoulder, and hitting the neck and head areas. Dr. Derman agreed that
improper chiropractic manipulations could also cause neck injuries and headaches. Dr.
Derman stated that he related appellant’s headaches to appellant’s neck condition and stated
that he did not know “for sure” that appellant’s neck condition was related to the car
accident.
Discussion
Standard of Review
           In his first point of error, appellant challenges the factual sufficiency of the evidence
to support the jury’s verdict. In reviewing a factual sufficiency point of error, we must
examine all of the evidence in the record, including any evidence contrary to the judgment
to determine if the challenged finding is so against the great weight and preponderance of the
evidence as to be clearly wrong or unjust. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1989). 
           The jury is the sole judge of the credibility of the witnesses and the weight to be given
their testimony. Transmission Exchange, Inc. v. Long, 821 S.W.2d 265, 271 (Tex.
App.—Houston [1st Dist.] 1991, writ denied); Rego Co. v. Brannon, 682 S.W.2d 677, 680
(Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The jury is free to believe or
disbelieve the witnesses’ testimony in whole or in part. Miller v. Kendall, 804 S.W.2d 933,
939 (Tex. App.—Houston [1st Dist.] 1990, no writ); Brannon, 682 S.W.2d at 680 (Tex.
App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.). The jury is entitled to disbelieve a witness
even though that witness is neither impeached nor contradicted. Blankenship v. St. Paul
Guardian Ins. Co., 911 S.W.2d 95, 99 (Tex. App.—Tyler 1995, no writ).
Negligence
           The elements of a negligence cause of action are a duty, a breach of that duty, and
damages proximately caused by the breach of duty. Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990); El Chico Corp. v. Poole, 732 S.W.2d 306, 311
(Tex.1987). Assuming without deciding that Fuqua owed appellant the duty to exercise
reasonable care in controlling his vehicle and that it breached that duty, our only focus is to
determine whether the failure to control his vehicle, proximately caused appellant’s claimed
injuries.
           The components of proximate cause are cause in fact and foreseeability. Travis v.
City of Mesquite, 830 S.W.2d 94, 98 (Tex.1992). These elements cannot be established by
mere conjecture, guess, or speculation. McClure v. Allied Stores of Tex., Inc., 608 S.W.2d
901, 903 (Tex.1980); Farley v. MM Cattle Co., 529 S.W.2d 751, 755 (Tex.1975). The test
for cause in fact is whether the negligent “act or omission was a substantial factor in bringing
about injury,” without which the harm would not have occurred. Prudential Ins. Co. of Am.
v. Jefferson Assocs., 896 S.W.2d 156, 161 (Tex. 1995) (citing McClure, 608 S.W.2d at 903);
see Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 458-59 (Tex.1992); Brown v. Edwards
Transfer Co., 764 S.W.2d 220, 223 (Tex.1988). Cause in fact is not shown if the defendant’s
negligence did no more than furnish a condition which made the injury possible. See Bell
v. Campbell, 434 S.W.2d 117, 120 (Tex.1968). As the Texas Supreme Court stated in Carey
v. Pure Distrib. Corp., 124 S.W.2d 847, 849 (Tex.1939), “The evidence must go further, and
show that such negligence was the proximate, and not the remote, cause of resulting injuries
[and] justify the conclusion that such injury was the natural and probable result thereof.” 
See, e.g., Boyd v. Fuel Distribs., Inc., 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ
denied). In other words, even if the injury would not have happened but for the defendant’s
conduct, the connection between the defendant and the plaintiff's injuries simply may be too
attenuated to constitute legal cause. See Union Pump Co. v. Allbritton, 898 S.W.2d 773, 776
(Tex.1995); Lear Siegler Inc. v. Perez, 819 S.W.2d 470, 472 (Tex. 1991).
           In this case, there was evidence of multiple accidents and occurrences, any of which,
according to the testimony of appellant’s treating physicians, could have been the cause of
appellant’s symptoms. Based on a review of the record, we conclude that the jury could have
decided that the car accident was not the proximate cause of appellant’s injuries. The jury’s
verdict was not against the great weight and preponderance of the evidence. We overrule
appellant’s first point of error.
Mention of Insurance Coverage
           In his second point of error, appellant claims the trial court erred in restricting him
from mentioning that he spoke to Fuqua’s “insurance” representative. A plaintiff may not
inform the jury that the defendant has insurance coverage, and the defendant may not inform
the jury that a plaintiff has insurance protection. Univ. of Tex. v. Hinton, 822 S.W.2d 197,
201 (Tex. App.—Austin 1991, no writ); Ford v. Carpenter, 216 S.W.2d 558, 559 (Tex.
1949). We overrule appellant’s second point of error.
Conclusion
           We affirm the trial court’s judgment.
 
                                                                             Sam Nuchia
                                                                             Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.