Opinion issued November 26, 2003




















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00805-CV
____________
 
FOUR BROTHERS BOATWORKS, INC.
AND BILLY B., INC., Appellants
 
V.
 
AMERICAN INDUSTRIAL HEAT TRANSFER, INC., Appellee
 

 
 
On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 00CV0468
 

 
 
MEMORANDUM OPINION
          Appellants, Four Brothers Boatworks, Inc. (Four Brothers) and Billy B., Inc.,
(Billy B.), challenge a take-nothing judgment rendered on their breach of implied
warranty of merchantability cause of action in favor of appellee, American Industrial
Heat Transfer, Inc. (American Industrial). In their sole point of error, appellants
contend that the jury’s verdict was “contrary to the overwhelming weight and
preponderance of the evidence.” We affirm.
                                                              Facts
          Appellants are sister companies that are owned and operated primarily by
Richard Ryan and his family in Galveston. Billy B. owned and operated six “crew
boats,” including the Nautilus, that transported passengers and cargo to ships and oil
rigs located in the Gulf of Mexico. Four Brothers repaired and serviced the “crew
boats.”
          In August of 1997, appellants decided to install a new engine oil cooling
system on the Nautilus, and, pursuant to this decision, Ryan contracted with Kinetic
Engineering Corporation (Kinetic) to design a “four pass tube” heat exchanger
system. After the parties agreed on the design and the type of heat exchangers to be
used, Kinetic ordered three heat exchangers from American Industrial, and Four
Brothers purchased them. These heat exchangers each contained a copper tube and
zinc anodes,


 which protected the copper from corrosion. Appellants had used similar
heat exchangers on their “crew boats” in the past and had never experienced any
problems with them. After purchasing the heat exchangers, appellants installed them
in the Nautilus’ three engines.
          In May of 1998, while the Nautilus was “running offshore in the Gulf,” the
captain discovered that the boat’s port engine was leaking oil. The captain brought
the Nautilus back to port, and appellants’ mechanics were “called in” to repair the
problem. The mechanics “pressure tested” the port engine’s heat exchanger and
determined that oil had leaked from the “oil side” of the heat exchanger through to
the “salt water side” and had been “dumped overboard.” This meant that there was
a lack of lubrication in the port engine and this “damaged [the port engine] to the
point [that] it should not be r[u]n anymore.” As a result, appellants had to rebuild the
port engine and install a new heat exchanger.
          In June of 1998, appellants discovered that the Nautilus’ starboard engine was
also leaking oil and that this had caused severe damage to the engine. Appellants had
to rebuild this engine and install a new heat exchanger. Because two out of the three
heat exchangers had failed, appellants decided to remove and replace the heat
exchanger in the Nautilus’ center engine.
          Appellants examined all three heat exchangers and found that the tubes in the
port and starboard engine heat exchangers had holes in them. Additionally,
appellants found that the tube in the center engine heat exchanger had a “crack” in it,
but the “crack” had been “plugged up” with “silver solder” to prevent leakage.
          Appellants contacted American Industrial and demanded that it supply
appellants with three new heat exchangers. After American Industrial refused,
appellants brought this lawsuit, claiming that the heat exchangers were not fit for
their ordinary purpose.
          At trial, the parties introduced contradictory expert testimony concerning the
source of the holes in the tubes. Appellants’ expert metallurgist, Stephen Anderson,
testified that the holes were produced by American Industrial’s manufacturing
process. Anderson determined that the holes in the tubes were originally single
“elongated pits” that became holes over time because of corrosion. Furthermore,
Anderson determined that the holes were almost identically located one inch from the
edge of the tubes, which suggested that the “pits” were produced by American
Industrial’s manufacturing process.
          In contrast, American Industrial’s expert metallurgist, Paul Kovach, testified
that the holes were caused by appellants’ failure to timely replace the zinc anodes on
the tubes. Kovach found that there were zinc anodes on only one side of the tubes,
and he testified that “as the[se] anodes deteriorated,” there was no “cathodic
protection” on the other side of the tubes and so “pitting [began].” These “pits” then
became holes over time because of corrosion.
          In support of Kovach’s testimony, American Industrial’s principal shareholder,
Gus Sariri, testified that his company “pressure tested” every heat exchanger,
“including the three that are at issue,” to check for leaks, and that American Industrial
had never manufactured a “failed” tube. Furthermore, Sariri testified that he believed
that the tubes in this case “failed” because of appellants’ improper maintenance.
Factual Sufficiency of the Evidence
          In appellants’ sole point of error, they argue that the jury’s verdict was
“contrary to the overwhelming weight and preponderance of the evidence” because
(1) “two out of the three heat exchangers failed after only ten months,” and Ryan
testified that similar heat exchangers “had lasted on appellants’ boats for as many as
25 years,” (2) appellants’ metallurgy expert testified that the heat exchangers failed
because of a “manufacturing defect,” and (3) “identical type” replacement heat
exchangers, made by a different manufacturer, “lasted problem free for several years.”
          Our review of the factual sufficiency of the evidence requires us to consider all
of the evidence, both in support of and contrary to the jury’s finding. Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). If a jury is presented with evidence
sufficient that reasonable minds could differ, we may not substitute our opinion for
that of the jury merely because we may have reached a different conclusion. Hebert
v. Hebert, 754 S.W.2d 141, 144 (Tex. 1988). Instead, we will set aside a jury’s
finding for factual insufficiency only if, after considering all the evidence, the jury’s
finding is so against the great weight and preponderance of the evidence that the
verdict was manifestly unjust. Miller v. Kendall, 804 S.W.2d 933, 939 (Tex.
App.—Houston [1st Dist.] 1990, no writ). Furthermore, the jury, as the trier of fact,
is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Id.
          A plaintiff in an implied warranty of merchantability case has the burden of
proving that goods were defective at the time that they left the manufacturer’s
possession. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 444 (Tex. 1989). 
Goods are defective if they are not fit for the ordinary purpose for which they are to
be used. See Tex. Bus. & Com. Code Ann. § 2.314(b)(3) (Vernon 2002).
          Here, it is true that Ryan testified that appellants had used similar heat
exchangers on their “crew boats” in the past and had never experienced any problems
with them. It is also true that appellants’ expert testified that the holes in the tubes
were produced by American Industrial’s manufacturing process. However, American
Industrial’s expert testified that the holes in the tubes were caused by appellants’
failure to maintain the tubes and to ensure proper “cathodic protection.” Also, Sariri
testified that American Industrial had never manufactured a “failed” tube, and he
believed that the tubes in this case “failed” because of appellants’ improper
maintenance.
          What weight to give contradictory testimonial evidence is within the sole
province of the jury. Miller, 804 S.W.2d at 939. Thus, the jury was free to believe
or disbelieve all or any part of the testimony of appellants’ or American Industrial’s
witnesses concerning the cause of the leak in the tubes. We may not substitute our
opinion for that of the jury. Hebert, 754 S.W.2d at 144.
          After reviewing the record, we cannot conclude that the jury’s verdict was
“contrary to the overwhelming weight and preponderance of the evidence.” 
Accordingly, we hold that the evidence was factually sufficient to support the jury’s
verdict.
          We overrule appellants’ sole point of error.Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.